In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY PERTAINING TO the INITIATIVE CONCERNING "TAXATION III."

Douglas BRUCE, Petitioner,

v.

STATE of Colorado; Natalie Meyer, Colorado Secretary of State; Douglas G. Brown, Director of the Office of Legislative Legal Services; State of Colorado Title Setting Board; and Does I–X, Respondents.

No. 92SA218.

Supreme Court of Colorado,
En Banc.

July 13, 1992.

Douglas Bruce, pro se.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for respondents.

Chief Justice ROVIRA delivered the Opinion of the Court.

This review proceeding was initiated by petitioner, Douglas Bruce, to challenge the title and ballot title and submission clause prepared by the Title Setting Board (Board) on the initiative for a constitutional amendment denominated "Taxation III." [1] Petitioner asserts that the title and ballot title and submission clause are misleading. He further contends that, because the text of the initiative was submitted to the secretary of state with the names of five sponsors in violation of section 1–40–101(2), 1B C.R.S. (1991 Supp.), which requires designation of two persons "to whom all notices or information concerning the petition shall be mailed," the Board was without jurisdiction to affix the ballot labels. Finally, petitioner claims that, upon rehearing, the Board was improperly constituted because one of the three members was absent. We disagree and accordingly affirm the Board.

I

In April 1992, five proponents submitted to the secretary of state a proposed additional article to the Colorado Constitution.[2] The names of the five proponents were listed on the last page of the initiative draft which was filed with the secretary of state. The first name listed was George S. Dibble, Jr., of the Colorado Association of Commerce and Industry. The secretary of

---

1. The proceeding is brought pursuant to section 1–40–102(3)(a), 1B C.R.S. (1991 Supp.). Petitioner is a registered elector in the State of Colorado.

2. The initiative proposed to add a new article enumerated article XXVII to the Colorado Constitution "in order to reduce the burden of increased taxation and to restrain the growth of government spending."

In accordance with § 1–40–101(1), 1B C.R.S. (1991 Supp.), a draft of the amendment was first submitted to the directors of the legislative council and the office of legislative legal services for review and comment. A public meeting was held, and then the draft of the initiative was submitted to the secretary of state.

state convened the Board which held a hearing on the initiative on May 6, 1992.[3] The title designated by the Board at that hearing describes the proposed initiative as:

AN AMENDMENT TO THE COLORADO CONSTITUTION TO LIMIT INCREASES IN STATE AND LOCAL GOVERNMENT APPROPRIATIONS; TO RESTRICT RESERVES OF GOVERNMENTAL REVENUES; TO ALLOW INITIATIVE AND REFERENDUM ELECTIONS FOR ALTERNATIVE LIMITS FOR CERTAIN LOCAL GOVERNMENTS; TO SPECIFY WHICH MEASURE PREVAILS IF VOTERS APPROVE MORE THAN ONE MEASURE IN THE 1992 GENERAL ELECTION LIMITING GOVERNMENTAL TAXES, REVENUES, SPENDING, OR APPROPRIATIONS; AND TO PROHIBIT CERTAIN STATE MANDATES ON LOCAL GOVERNMENTS.

The ballot title and submission clause as designated by the Board states:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO LIMIT INCREASES IN STATE AND LOCAL GOVERNMENT APPROPRIATIONS; TO RESTRICT RESERVES OF GOVERNMENTAL REVENUES; TO ALLOW INITIATIVE AND REFERENDUM ELECTIONS FOR ALTERNATIVE LIMITS FOR CERTAIN LOCAL GOVERNMENTS; TO SPECIFY WHICH MEASURE PREVAILS IF VOTERS APPROVE MORE THAN ONE MEASURE AT THE 1992 GENERAL ELECTION LIMITING GOVERNMENTAL TAXES, REVENUES, SPENDING, OR APPROPRIATIONS; AND TO PROHIBIT CERTAIN MANDATES ON LOCAL GOVERNMENTS?

Finally, the summary prepared by the Board provides that:

This measure limits percentage increases in appropriations to: (1) For state government, the percentage increase in state personal income per capita plus the percentage increase in state population; (2) for local governments other than school districts, the percentage increase in state personal income per capita plus the percentage increase in valuation for assessment due to annexation, inclusion of territory, and new construction; or (3) for state and local appropriations for public education, the percentage increase in state personal income per capita plus the percentage increase in pupils. Appropriations of certain revenues, such as enterprise funds, federal moneys, grants, gifts, bond proceeds, and bond payments, are excluded from the appropriations limits. The appropriations limits may be exceeded by voter approval.

The measure provides that the appropriations limit for local governments does not apply to any home rule municipality which has its own voter-approved tax, spending, or appropriations limitation prior to this measure taking effect. The measure also allows state and local governments by extraordinary votes of their respective governing bodies upon declaration of an emergency to impose temporary taxes and appropriate moneys exceeding the limits to meet emergencies but such taxes may be extended only by voter approval.

This measure provides that voters of any local government, except school districts and special districts, may adopt alternative appropriations, emergency, and reserve limitations by initiative or by referral to the voters by the governing body of the local government. The state legislature is required to establish limits on reserves of governmental revenues and the measure mandates taxpayer refunds of any revenues in excess of such reserves.

The measure specifies if, at the 1992 general election, the voters approve more than one measure concerning limitations on governmental taxes, revenues, appropriations, or spending, that the measure

---

**3.** The Board is composed of the secretary of state, the attorney general, and the director of the office of legislative legal services or the director's designee. § 1–40–101(2), 1B C.R.S. (1991 Supp.).

receiving the greater number of affirmative votes would take effect and all other measures would be null and void.

The measure prohibits the state from imposing any new or increased state mandate upon local governments unless additional state moneys are provided to fully fund the new or increased state mandate. Local governments are allowed to implement, at their option, state mandates for which additional moneys are not provided.

The fiscal impact of this measure is indeterminate since: 1) The amount of state or local government appropriations in future years and the effect of the appropriations limits established by the measure are not yet known; 2) the restrictions on reserves of governmental revenues are yet to be established; and 3) the fiscal impact of the prohibition against the imposition of new or increased state mandates upon local governments is dependent upon future decisions concerning the imposition of state mandates.[4]

Following the hearing, three of the five original proponents withdrew their sponsorship of the initiative.[5] After petitioner filed a motion for rehearing, notice of the motion, as with all other notices and information pertaining to the initiative, was sent to Dibble. At the rehearing held May 20, 1992, the two members of the Board present—the secretary of state and the director of the office of legislative legal services—voted to affirm the original designations.

## II

■ Petitioner asserts that the title and ballot title and submission clause are misleading because they fail to highlight the language of the initiative which states that if "Taxation III" received more votes at the general election than any other initiative on the ballot concerning this same subject matter, it would render null and void those other initiatives concerning governmental taxes, revenues, appropriations or spending. Petitioner further objects to the use of certain terms and the omission of other terms, as well as omission of language explaining areas of government spending not encompassed by this initiative.

### A

We have recently set out the procedure by which proposals for constitutional amendments or statutory changes are set for inclusion on the general election ballot so that the electorate is apprised of the nature of the initiative and can ultimately determine whether such initiative becomes part of the constitution or laws of the state. *In re the Title, Ballot Title and Submission Clause, and Summary Adopted February 19, 1992, Pertaining to the Proposed Tobacco Tax*, 830 P.2d 984, 988–89 (Colo.1992) (hereinafter *In re Tobacco Tax*). Our review of the Board's actions is guided by the standards recently set forth in *In re the Title, Ballot Title and Submission Clause Approved September 4, 1991, with Regard to the Proposed Initiated Constitutional Amendment Concerning Limited Gaming in Manitou Springs, Fairplay and in Airports*, 826 P.2d 1241, 1245 (Colo.1992) (hereinafter *In re Gaming in Manitou Springs*). "In reviewing the Board's action, we must not in any way concern ourselves with the merit or lack of merit of the proposed amendment, since that issue rests with the electorate." *Id.* Instead, we focus only on whether the title, ballot title and submission clause "accurately reflect the central features of the initiated measure in a clear and concise manner...." *Id.* The Board's role in setting a title is to "correctly and fairly express the true intent and meaning" of the proposed law. § 1–40–101(2), 1B C.R.S. (1991 Supp.). Additionally, the Board should set a title

---

4. Bruce does not contend that the summary is unfair or fails to express the true meaning and intent of the initiative.

5. The petitioner asserts that three of the listed proponents withdrew in writing from sponsorship of the amendment. Although no record was filed with this appeal, the Board agrees that three of the listed proponents withdrew their sponsorship.

which will not mislead voters as to the effect of a "yes" or "no" vote. *Id.*

Here, the title and ballot title and submission clause state that this initiative would "specify which measure prevails if voters approve more than one measure in the 1992 general election limiting governmental taxes, revenues, spending, or appropriations." Petitioner argues that this provision would override the current statutory provision for resolution of conflicting provisions and that the language of the title and ballot title and submission clause does not sufficiently inform the electorate of this change. Section 1–40–113, 1B C.R.S. (1991 Supp.), provides in pertinent part: "A majority of the votes cast thereon shall adopt any measure so submitted, and, in case of adoption of conflicting provisions, the one which receives the greatest number of affirmative votes shall prevail in all particulars as to which there is a conflict."

We agree with petitioner that application of this initiative provision would effectuate a different result than application of the statutory provision where there are conflicts between two measures voted for by a majority of the electorate. Here, the initiative provides that, if there are two or more initiatives on the ballot at the general election pertaining to governmental taxation or spending, only one initiative would prevail. The statutory provision, however, would allow parts of an initiative receiving a majority vote, but not receiving the most votes, to take effect as long as those parts do not conflict with any provisions of the initiative receiving the most votes.

The use of the words "which measure prevails" indicates that, under this initiative, one measure will win. "Prevail" is commonly defined as "to gain victory." *Webster's Third New International Dictionary* 1797 (1986). Inclusion of language explaining how this initiative alters the current test "would increase the length of the title and ballot title and submission clause while providing little information that would advance the voters' understanding of the initiative." *In re Tobacco Tax*, 830 P.2d at 990. Because the common understanding of this language suggests that only one measure concerning this subject matter can win or exist despite the fact that the majority of the electorate voted for more than one, we are satisfied that this language is not misleading.

**B**

█ Petitioner also contends that the term "appropriations" is unfamiliar to the voters and should be replaced with "spending authority." We do not agree. "Appropriations" is a term we believe to be within the common understanding of most voters. Since this word was used by the proponents of the initiative, we find that use of the term "appropriations" in the title and ballot title and submission clause effectuates the Board's goal of reflecting the true intent and meaning of the proposal.

█ Petitioner further contends that the initiative is intended to prohibit only new state mandates on local government and not existing mandates. Consequently, he objects to the use of the term "certain state mandates" in the titles because the language implies that existing mandates are encompassed within the prohibition. There is no requirement that every possible effect of a measure be included within the title or the ballot title and submission clause. *In re Title Pertaining to Sale of Table Wine in Grocery Stores*, 646 P.2d 916, 921 (Colo.1982). Certainly, therefore, effects of a measure which might be implied but would not occur, cannot be required to be included in the descriptions which are statutorily required to be brief. § 1–40–101(2), 1B C.R.S. (1991 Supp.).

█ Certain omissions from the title and ballot title and submission clause are also contested by petitioner. Specifically, he asserts that the descriptions affixed by the Board are misleading because they fail to mention that the measure does not limit spending to pay debt, or that the measure would allow elected officials to override the limitations imposed on government spending. He argues that the first clause, stating that the measure would limit increases in government appropriations, should state that only "certain" increases are limited.

Petitioner also asserts that the initiative erodes the control of local governments, transferring some of their current powers to the state government, and that this is not adequately pointed out in the title and ballot title and submission clause. Additionally, he asserts that the language fails to point out the differentiation afforded by the measure on spending for education versus other local government spending, and the differentiation for limiting local government spending to moneys appropriated, while there is no such limitation in the measure for state government spending. We do not agree. A title and ballot title and submission clause should be brief, § 1–40–101(2), 1B C.R.S. (1991 Supp.), and need not "describe every feature of a proposed measure...." *In re Gaming in Manitou Springs*, 826 P.2d at 1244. Considerable deference is granted to the Board's resolution of the "interrelated problems of length, complexity, and clarity in designating a title and ballot title and submission clause." *In re Tobacco Tax*, 830 P.2d at 989. As we have stated, the Board's role in setting titles is to "correctly and fairly express the true intent and meaning" of the proposed law. Petitioner's assertions that the titles must more fully distinguish the effects of certain provisions of the amendment is unrealistic where, as here, the initiative is a complicated measure with numerous inclusions and exclusions. The summary, as statutorily required, more clearly reflects these differences. To include such thorough explanations and explain these differences in the title and ballot title and submission clause would result in so complicated a title, ballot title and submission clause as to confuse a voter attempting to determine the effect of a "yes" or "no" vote. § 1–40–101(2), 1B C.R.S. (1991 Supp.).

### III

■ Petitioner also contends that the Board acted outside the scope of its jurisdiction in fixing the title, ballot title and submission clause, and summary, because the draft of the initiative filed with the Board listed five proponents, while the statute requires that "[a]t the time of the fil-ing, the proponents of the measure shall designate two persons to whom all notices or information concerning the petition shall be mailed." § 1–40–101(2), 1B C.R.S. (1991 Supp.).

This statute, however, by its plain language, does not limit the number of proponents who may sponsor an initiative but limits the number of persons who are designated to receive through the mail notices and information regarding the petition. Failure to comply with this designation requirement does not affect the jurisdiction of the Board to set the title, ballot title and submission clause, and summary, but rather is a procedural requirement which promotes efficient notification.

### IV

■ The rehearing was held with only the secretary of state and the director of the office of legislative legal services present, and both voted to uphold the descriptions affixed at the first hearing before the Board. Petitioner's last claim of error is that the absence of the attorney general or her designee violates the mandate of section 1–40–101(2), 1B C.R.S. (1991 Supp.), which provides that "the secretary of state shall call to his assistance the attorney general and the director of the office of legislative legal services or the director's designee, the three of whom, constituting a board for such purposes, a majority controlling, shall proceed to designate and fix a proper fair title...."

We addressed this same argument in *In the Matter of the Title, Ballot Title and Submission Clause, and Summary for the Proposed Initiated Constitutional Amendment Concerning Unsafe Workplace Environment*, 830 P.2d 1031, 1036 (Colo.1992). There we held that: "[W]here a three-member board has authority to act, the majority of that three-member board—two members—also has that authority. Consequently, since upon rehearing two members voted to affirm, we find that the Board acted within its statutory grant of power."

Accordingly, we affirm the ruling of the Board.

