In the Matter of the Title, Ballot Title, Submission Clause, and Summary Clause Adopted March 16, 1994, by the Initiative Title Setting Review Board and Pertaining to a PROPOSED INITIATIVE FOR AN AMENDMENT TO ARTICLE XVI, SECTION 6, COLORADO CONSTITUTION, ENTITLED "W.A.T.E.R.".

Rodney Kuharich, Petitioner,

and

Honorable Robert L. Pastore and Bill Thiebaut, and Title Setting Review Board, Natalie Meyer, Stephen Erkenbrack, and Becky Lennahan, Respondents.

No. 94SA117.

Supreme Court of Colorado, En Banc.

June 6, 1994.

Anderson, Gianunzio, Dude, Pifher & Lebel, P.C., Mark T. Pifher, Colorado Springs, for petitioner.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for respondents.

Justice LOHR delivered the Opinion of the Court.

Rodney Kuharich, a registered elector of the State of Colorado, brings this review proceeding pursuant to section 1–40–107(2), 1B C.R.S. (1993 Supp.). Kuharich seeks reversal of an action of the Title Board (the Board) designating and fixing a title, together with a ballot title and submission clause,[1] and preparing a summary for an initiative to amend Article XVI, Section 6, of the Colorado Constitution.[2] The initiative is denominated W.A.T.E.R. and would effect certain changes concerning water transfers and preferences among water uses in Colorado.

Kuharich contends that the title, submission clause, and summary do not correctly and fairly express the true intent and meaning of the proposed amendment and that due to procedural errors, the initiative must be returned to the directors of the legislative council and the office of legislative legal services for a new meeting. For the reasons set forth below, we affirm the action of the Board.

I.

In 1993, the proponents of the initiative (the proponents) submitted a draft of the initiative petition to the directors of the legislative council and the office of legislative legal services (collectively, the directors),[3] as required by section 1–40–105(1), 1B C.R.S. (1993 Supp.). On December 2, 1993, pursuant to section 1–40–105(1), 1B C.R.S. (1993 Supp.), the directors held a public meeting at which they presented their comments concerning the petition. On January 31, 1994, the proponents submitted a draft of the initiative to the secretary of state pursuant to section 1–40–105(4), 1B C.R.S. (1993 Supp.). The Board conducted a public title setting meeting on February 16, 1994, pursuant to section 1–40–106, 1B C.R.S. (1993 Supp.). At that meeting, the Board unanimously approved a title, submission clause, and summary. The meeting was continued to March 2, 1994, however, to consider a fiscal impact statement to be added to the summary. At the March 2 meeting, the Board approved the addition of a fiscal impact statement to the previously accepted summary and set the title. On March 9, 1994, Kuharich filed a motion for rehearing. On March 16, 1994, the Board denied the motion.[4]

1. For simplicity, we will hereafter refer to the ballot title and submission clause as the "submission clause."

2. The text of the initiative is set out in Appendix A of this opinion. The title, submission clause, and summary are set out in Appendix B.

3. § 1–40–105 reiterates and supplements provisions concerning initiated constitutional amendments and initiated laws contained in Section 1(5) of Article V of the Colorado Constitution.

4. The record before us does not disclose whether Kuharich's motion for rehearing was denied on March 16, 1994. However, in their briefs, both parties assert that it was. The certificate from

The proposed amendment would effect two important changes to Article XVI, Section 6, of the Colorado Constitution. First, the amendment would elevate the preferential status of those using water for agricultural purposes to the status of those using water for domestic purposes. Second, the amendment would require certain water transfers from any water conservancy district or water conservation district for use of water outside of such district to be approved by a majority of the statutorily qualified electors of the district.[5] The extra-district transfers subject to such approval would be those that would remove water from a river basin subject to an interstate river basin compact and those that are officially contested by the district from which the water is to be removed.[6]

## II.

Kuharich asserts four challenges to the title, submission clause, and summary. In his first three challenges, Kuharich claims that the title, submission clause, and summary fail fairly to express the true intent and meaning of the proposed amendment. Those three challenges are as follows: First, the title and submission clause may mislead voters into believing that the proposed amendment will apply only to inter-basin transfers when in fact certain intra-basin transfers will be affected. Second, the title, submission clause, and summary state that the electors of a district must approve final conditional water right *decrees* when in fact the proposed amendment provides that the electors

must approve water *transfers*. Third, the title and submission clause do not reflect that the proposed amendment would significantly change the definitions of "final conditional decree," "water conservancy district," and "water conservation district."

Kuharich's fourth and final challenge is that during the December 2, 1993, public meeting at which the directors gave their comments to the proponents concerning the petition, as required by section 1–40–105(1), proper consideration was not given to the fact that certain critical language in Article XVI, Section 6, of the Colorado Constitution, as it now exists, would be removed by the proposed amendment. This procedural defect, claims Kuharich, requires that the initiative be returned to the directors for another public meeting. After reviewing the general principles that guide our review, we consider Kuharich's four challenges in turn.[7]

## A.

Section 1–40–106(3)(b) of the Colorado Revised Statutes provides:

In setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a "yes" or "no" vote will be unclear. The title for the proposed ... constitutional amendment ... shall correctly and fairly express the true intent and meaning thereof....

the secretary of state purporting to reflect the results of March 16, 1994, represents that on that date the Board held a "rehearing," and the title, submission clause, and summary attached thereto reflect the language adopted at the March 2, 1994, meeting. Other than this certificate, nothing in the briefs or the record before us indicates that the Board granted Kuharich's motion for rehearing or conducted a rehearing of any kind.

5. The voters authorized to approve such transfers would be voters of the district from which water would be transferred that is most directly affected by the transfer.

6. The water transfers subject to voter approval are those allowed by "final conditional decrees" entered by water courts of competent jurisdiction.

7. We note that as submitted to this court, the proposed amendment and the summary contain several errors in spelling and grammar. The transcript of the Board's meeting indicates that the Board was aware of and purportedly corrected several of the spelling errors. However, we have before us only the certificate from the secretary of state containing the proposed amendment as originally submitted to the Board on January 31, 1994, which reflects the errors. We also note that Kuharich has not challenged the statement in the summary that "[d]uring periods of drought a higher preference category of water right can 'call' water that would otherwise be available for use by a right with lower preference." *See, e.g., Town of Sterling v. Pawnee Ditch Ext. Co.,* 42 Colo. 421, 94 P. 339 (1908); Note, *A Survey of Colorado Water Law,* 47 Denv.L.J. 226, 273 (1970).

§ 1–40–106(3)(b), 1B C.R.S. (1993 Supp.). "The purpose of the title setting process is to ensure that both [the] persons reviewing an initiated petition and the voters are fairly and succinctly advised of the import of the proposed law." *In re Proposed Initiative on School Pilot Program*, 874 P.2d 1066, 1070 (Colo.1994) (quoting *In re Proposed Tobacco Tax Amendment 1994*, 872 P.2d 689, 693 (Colo.1994)); *In re Proposed Initiative on Education Tax Refund*, 823 P.2d 1353, 1355 (Colo.1991). The Board is not required to include a description of every feature of a proposed measure. *School Pilot Program*, at 1069; *In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonito (Limited Gaming IV)*, 873 P.2d 733, 739 (Colo.1994). Rather, the Board's language must "clearly and concisely reflect the central features of a proposed initiative." *In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the Town of Idaho Springs*, 830 P.2d 963, 970 (Colo.1992).

■ On review, this court does not address the merits of a proposed initiative. *Limited Gaming IV*, at 739–40. Neither do we interpret the meaning or potential effects of the initiative, *School Pilot Program*, at 1070–71, nor suggest how it will be applied if adopted, *Limited Gaming IV*, at 739–40. Our role is not to consider whether the Board set the best possible title, submission clause, and summary. *In re Proposed Initiated Constitutional Amendment Concerning the "Fair Treatment of Injured Workers Amendment."*, 873 P.2d 718, 719 (Colo.1994); *In re Proposed Election Reform Amendment*, 852 P.2d 28, 35 (Colo.1993). However, "we will reject the Board's language when it is inaccurate or misleading with respect to the meaning and intent of the initiative." *Limited Gaming IV*, at 739–40. With the foregoing principles in mind, we now turn to Kuharich's challenges to the title, submission clause, and summary.

### B.

■ The proposed amendment requires elector approval only when water is to be transferred out of a water conservancy or water conservation district pursuant to a "fi-

nal conditional decree" entered by a water court. In some cases, a transfer that removes water from a district may nonetheless transfer water within the same river basin. Such "intra-basin" transfers would be subject to the voter approval requirement of the proposed amendment if the transfer was officially contested by the district.

That such intra-basin transfers are governed by the proposed amendment is clearly set forth in the title and the submission clause. Each specifies that the approval by electors of water conservancy districts or water conservation districts is required to transfer "water for use outside of such districts when such a transfer removes waters from a river basin subject to an interstate river basin compact *or when said transfer is officially contested by such a district.*" (Emphasis added.) The summary reinforces this clear language by stating, "[t]he measure would require the approval by a majority of the statutorily qualified electors of water conservancy districts or water conservation districts most directly affected ... transferring water for use outside of such districts, when such a transfer removes waters from a river basin subject to an interstate river basin compact *or when such transfer is officially contested by such a district.*" (Emphasis added.) The use of the disjunctive "or" in the title, submission clause, and summary preceding the reference to an officially contested transfer is adequate to make clear that the elector approval is required with respect to any officially contested transfer, whether such transfer is within the same river basin or into another basin. Moreover, the amendment itself refers explicitly to intra-basin transfers, as is explained in the summary:

[The measure] specifies that a district officially contests intra-basin transfers only when the governing board of such a district challenges in court the proposed transfer at all times, never stipulating to any such decree of extra district transfer and never dropping out of the proceedings.

Kuharich contends, however, that the absence of any specific reference to intra-basin transfers in the title and submission clause is potentially misleading because it may create

the impression that only out-of-basin transfers may be subject to elector approval. We disagree with this contention.

The title and submission clause clearly and concisely reflect that when officially challenged by a district, extra-district water transfers would require elector approval under the proposed amendment. *See Limited Gaming in the Town of Idaho Springs*, 830 P.2d at 970 ("We will not interfere with the Board's discretion in choosing language if that choice clearly and concisely reflects the central features of a proposed initiative."). The title and submission clause in no way suggest that intra-basin transfers are exempt from this requirement. It is true that they do not explain that some extra-district transfers may be out-of-basin transfers while other extra-district transfers may be intra-basin transfers. However, as discussed above, the Board need not include every feature of the proposal. *School Pilot Program*, at 1069; *Limited Gaming IV*, at 739. Although the title and submission clause must correctly and fairly express the intent and meaning of the proposed amendment, they must also be brief. § 1–40–106(3)(b), 1B C.R.S. (1993 Supp.). Here, the language used by the Board is sufficiently brief yet fairly reflects the purpose of the proposed amendment. *See In re Proposed Initiative on Surface Mining*, 797 P.2d 1275, 1280 (Colo.1990) ("Our inquiry is limited to determining whether [the] language in the title fairly reflects the purpose of the proposed amendment."). Thus, we reject Kuharich's contention that the title and submission clause are defective because they fail to make specific reference to intra-basin transfers.

### C.

■ Kuharich's second challenge involves a disparity between the language of the proposed amendment and that of the title, submission clause, and summary. The proposed amendment states:

... whenever a water court of competent jurisdiction enters a final conditional decree allowing a water transfer from any water conservancy district or water conservation district [under certain specified circumstances], *that proposed transfer of water* must also receive the approval of the majority of the statutorily qualified electors....

(Emphasis added.)

In contrast, the title states that the proposed amendment would "require approval by a majority of the statutorily qualified electors ... of *final conditional water right decrees....*" (Emphasis added.) The submission clause and summary repeat this language. The clear intent of the proposed amendment is that, under certain circumstances, once a final conditional decree is entered, a transfer of water pursuant to that decree must await elector approval. Voter approval of the decree itself is not required.[8]

Kuharich contends that the title, submission clause, and summary do not fairly reflect the true intent and meaning of the proposed amendment because they represent that electors approve the *decree* rather than the transfer pursuant to the decree. Kuharich expresses concern that this may mislead voters into believing that the proposed amendment will make it more difficult to obtain vested conditional water rights because elector approval would be required before a decree would become effective. Kuharich's claim is unfounded.

The title, submission clause, and summary might have been more carefully drafted. However, as discussed above, it is not our role to demand the best possible language from the Board. *Injured Workers Amendment*, at 719–20; *Election Reform*, 852 P.2d at 35. Here, the language used by the Board is not misleading with respect to what the electors must approve under the proposed amendment. *See Limited Gaming IV*, at 739–40. The thrust of the proposed amendment is that elector approval is required before water can be transferred out of a district under certain specified circumstances. Although the operative language of

---

8. Although we may not speculate as to the meaning and effect of the phrase "final conditional decree" as used in the amendment, *School Pilot Program*, at 1070–71, it is clear from the amendment that voter approval is to occur after such a decree is entered.

the amendment[9] requires the approval of the transfer whereas the title, submission clause, and summary refer to the approval of the decree authorizing the transfer, the practical effect is the same. Voter approval is required before any transfer subject to the proposed amendment can be accomplished. For the purpose of describing the essential effect of the proposed amendment, the inaccuracy is technical only and is not misleading. We therefore reject Kuharich's claim that the title, submission clause, and summary do not fairly express the true intent and meaning of the proposed amendment in this regard.

## D.

■ In his third challenge, Kuharich argues that the title and submission clause do not fairly reflect the content of the proposed amendment because they do not describe changes in the definitions of "final conditional decree," "water conservancy district," and "water conservation district." We reject this argument.

The proposed amendment contains a number of references to final conditional decrees of a water court. Such references are found in the provision specifying that certain water transfers allowed by a final conditional decree must also receive elector approval, in a provision specifying that conditional decrees that become final before January 1, 1995, are not subject to elector approval, and in a provision specifying how a conditional decree becomes final. The proposed amendment also contains the following provision:

> All final decrees which have not received voter approval as required by this section at the next general election practicable *shall be deemed contingent* and no transfer out of the district may begin until and unless voter approval is obtained.

(Emphasis added.) Kuharich contends that the quoted language creates a new category

of decrees, *i.e.,* "contingent decrees," and that the title and submission clause fail adequately to reflect this result. However, although the title and submission clauses do not employ the term "contingent," they do explicitly state that certain final conditional decrees are subject to elector approval.[10] The provision of the proposed amendment that introduces the term "contingent" merely describes the status of final conditional decrees allowing transfers that have not received that approval. It is not our role to interpret the meaning or potential effects of the initiative with respect to such contingent decrees, *School Pilot Program,* at 1070–71, nor may we suggest how such decrees might be applied in the future, *Limited Gaming IV,* at 739–40. Because the title and submission clause clearly indicate that certain final conditional decrees must be approved by electors before a transfer can be effected, we reject Kuharich's contention that those clauses do not fairly express the true intent and meaning of the proposed amendment in this regard.

■ Kuharich also argues that the proposed amendment redefines "water conservancy districts" and "water conservation districts." The proposed amendment provides:

> Water conservancy districts and water conservation districts include those political subdivisions statutorily referred to as such prior to the effective date of this section and to [sic] any and all governmental subdivisions with the same or substantially similar statutory purpose and function of either type of district which may exist statutorialy [sic] or constitionally [sic] in the future.

Kuharich claims that this provision "constitutes a clear and substantial departure" from the current use of the terms "water conservancy district" and "water conservation district." Therefore, he argues, the title and submission clause are defective because they fail to note this departure. Kuharich con-

---

9. The proposed amendment itself refers to voter approval of "final decrees" in the section describing certain of those decrees as contingent. *See infra* at 866.

10. *See* section IIC, *supra,* for a discussion of the discrepancy between the title, submission clause,

and summary, on the one hand, and the operative provisions of the proposed amendment, on the other, with regard to whether the voters must approve final conditional decrees or water transfers allowed by such decrees.

tends that even municipalities may be encompassed by the new definition because municipalities share some of the functions of water conservancy and conservation districts. This argument fails.

Article forty-five of Title thirty-seven of the Colorado Revised Statutes contains provisions relating to water conservancy districts. §§ 37–45–101 to –153, 15 C.R.S. (1990 & 1993 Supp.). Articles forty-six, forty-seven, and forty-eight of the same title describe several water conservation districts. §§ 37–46–101 to –151, 15 C.R.S. (1990 & 1993 Supp.); §§ 37–47–101 to –151, 15 C.R.S. (1990); §§ 37–48–101 to –195, 15 C.R.S. (1990 & 1993 Supp.). The proposed amendment does not expand the existing definitions of water conservancy or water conservation districts found in these articles. It merely provides for the possibility that in the future, new governmental subdivisions may be created to serve the same or substantially similar purposes or functions as the existing districts. Such a provision does not represent a radical departure from existing definitions and need not be included in the title and submission clause. *See School Pilot Program,* at 1069, 1071 (Board is required to reference only essential features of an initiative, not all features thereof). Kuharich's third challenge thus fails.

E.

Kuharich's fourth and final challenge concerns the public meeting held on December 2, 1993, pursuant to section 1–40–105, 1B C.R.S. (1993 Supp.). Kuharich argues that because certain features of the proposed amendment concerning priority of water rights were not discussed at that meeting, the initiative must be returned to the directors and another public meeting held. We do not accept this argument.

At present, Article XVI, Section 6, of the Colorado Constitution provides:

The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; but when the waters of any natural stream are not sufficient for the

service of all those desiring the use of the same, those using the water for domestic purposes *shall have the preference over those claiming for any other purpose,* and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes.

Colo. Const. art. XVI, § 6 (emphasis added).

The draft of the initiative as originally submitted to the directors began in the same manner as the existing text of Article XVI, Section 6, as quoted above. The draft, however, omitted the passage underlined in the above quotation and did not indicate the omission in any way. The result of the omission is that the proposed amendment would elevate the preferential status of users of water for agricultural purposes to a parity with that of users of water for domestic purposes. The remainder of the draft, that is, those passages that the proposed amendment would add to the existing text, was presented in bold capital letters. At the December 2, 1993, meeting, the proponents represented that the section of the draft preceding the bold capital letters duplicated the presently existing language of Article XVI, Section 6. The omission was not noted or discussed at the meeting.

At the title setting meeting held on February 16, 1994, the Board brought the omission to the attention of the proponents. The proponents explained that the omission was a result of a typographical error, but elected to retain the omission in the proposed initiative.

■ During the public meeting to be held by the directors upon submission of a proposed initiative, the directors are to present comments to the proponents of the petition concerning the format or contents of the petition, and are to suggest editorial changes, where appropriate, to promote the use of plain, nontechnical language. § 1–40–105(1), 1B C.R.S. (1993 Supp.). Thereafter, the proponents may, but need not, amend the petition in response to the directors' comments. § 1–40–105(2), 1B C.R.S. (1993 Supp.). The purpose of the public meeting is to inform the proponents and the public of the potential impact of the initiative. *In re Title, Ballot Title and Submission Clause, and*

*Summary Adopted May 16, 1990,* 797 P.2d 1283, 1287 (Colo.1990). In *May 16, 1990,* this court reversed a decision of the Board because the Board set a title, submission clause, and summary when the proponents of the proposed initiative had failed to submit the initiative to the directors for a public meeting. *Id.* at 1292. We held that because no public meeting was held, the Board lacked jurisdiction to set the title, submission clause, and summary. *Id.* at 1288, 1292.

■ In the present case, the statutory requirement of a public meeting was satisfied. *See* § 1–40–105(1), 1B C.R.S. (1993 Supp.). Furthermore, there is no statutory requirement that the directors comment on every aspect of a proposed amendment. We have noted that public meetings "help assure that all relevant questions and issues surrounding the proposals are raised at the proper time— before the circulation of the petition for signatures." *May 16, 1990,* 797 P.2d at 1288 (quoting Legislative Council of the Colorado General Assembly, *An Analysis of 1980 Ballot Proposals,* Research Publication No. 248 (1980) at 4). However, both the directors and those who attended the December 2, 1993, public meeting had an opportunity to comment on the omission and its implications for water use priorities. The omission was somewhat obscured by the contrast in the lettering. However, the fact that the participants either overlooked or chose not to address the omission does not constitute a statutory violation. Furthermore, the title, submission clause, and summary all clearly and prominently state that under the proposed amendment, domestic water use would have preference only over manufacturing water use. Under these circumstances, we perceive no important purpose to be served by a further meeting of the directors. We therefore reject Kuharich's contention that the initiative must be returned to the directors for a new meeting.

### III.

We hold that the title, submission clause, and summary correctly and fairly express the true intent and meaning of the proposed amendment and that the initiative need not be returned to the directors of the legislative council and the office of legislative legal services for a new meeting. Accordingly, we affirm the action of the Board.

MULLARKEY, J., does not participate.

### APPENDIX A

### "THE W.A.T.E.R. AMENDMENT"

*WILLINGNESS* AND *APPROPRIATENESS* IN *TRANSFERS* AND *EXPORTS* OF *RIVERS*

**ARTICLE XVI Section 6. Diverting unappropriated water—priority preferred uses.** The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes, and those using the water for agricultural purposes shall have preference over those using the same for manufacturing purposes. HOWEVER, BE IN [sic] ENACTED BY THE PEOPLE OF THE STATE OF COLORADO THAT FROM AND AFTER JANUARY 1, 1995, WHENEVER A WATER COURT OF COMPETENT JURISDICTION ENTERS A FINAL CONDITIONAL DECREE ALLOWING A WATER TRANSFER FROM ANY WATER CONSERVANCY DISTRICT OR WATER CONSERVATION DISTRICT, FOR ANY USE OF SAID FINALLY CONDITIONALLY DECREED WATER OUTSIDE OF SUCH DISTRICT, AND SAID WATER TRANSFER REMOVES WATERS FROM A RIVER BASIN SUBJECT TO AN INTERSTATE RIVER BASIN COMPACT OR WHEN SAID TRANSFER IS OFFICIALLY CONTESTED BY THAT DISTRICT, THAT PROPOSED TRANSFER OF WATER MUST ALSO RECEIVE THE APPROVAL OF THE MAJORITY OF THE STATUTORILY QUALIFIED ELECTORS OF THAT DISTRICT FROM WHICH THE WATER IS BEING TRANSFERRED WHICH IS MOST DIRECTLY AFFECTED BUY [sic] SUCH TRANSFER WHICH VOTERS ACTUALLY CAST

BALLOTS AT AN ELECTION FOLLOWING SAID FINAL CONDITIONAL DECREE." [sic]

NO CONDITIONAL DECREE FOR THE TRANSFER OF WATER OUTSIDE A WATER CONSERVANCY OR WATER CONSERVATION DISTRICT WHICH BECOMES FINAL BEFORE JANUARY 1, 1995, SHALL BE SUBJECT TO SUBMISSION TO THE ELECTORATE PURSUANT TO THIS SECTION.

A CONDITIONAL DECREE TRANSFERRING WATER FROM A WATER CONSERVANCY OR WATER CONSERVATION DISTRICT BECOMES FINAL IF NOT APPEALED AND WHEN THE TIME FOR FILING AN APPEAL EXPIRES OR UPON THE COLORADO SUPREME COURT AFFIRMING SAID CONDITIONAL DECREE.

THE WATER COURT JUDGE SHALL MAKE A DETERMINATION AS TO WHICH WATER CONSERVANCY OR WATER CONSERVATION DISTRICT IS THE ONE MOST DIRECTLY AFFECTED TAKING INTO ACCOUNT THE LOCATION OF THE POPULATION AFFECTED, LOCATION OF THE ACREAGE AFFECTED, PLACES OF POTENTIAL WATER LOSS, PLACES OF POTENTIAL ECONOMIC LOSS, OR A COMBINATION OF THESE FACTORS.

A WATER CONSERVANCY OR WATER CONSERVATION DISTRICT OFFICIALLY CONTESTS INTRA–BASIN TRANSFERS AS REFERRED TO IN THIS SECTION ONLY WHEN THE GOVERNING BOARD CHALLENGES IN COURT THE PROPOSED TRANSFER AT ALL TIMES NEVER STIPULATING TO ANY SUCH DECREE OF EXTRA DISTRICT TRANSFER AND NEVER DROPPING OUT OF SUCH CONTESTATION AND AT ALL TIMES REMAINING IN OBJECTION OFFICIALLY IN COURT WHETHER AT THE TRIAL LEVEL OR APPELLATE LEVEL.

THE MATTER SHALL BE VOTED UPON BY THE ELECTORATE OF THE WATER CONSERVANCY OR WATER CONSERVATION DISTRICT AT THE NEXT GENERAL ELECTION PRACTICABLE FROM AND AFTER THE CONDITIONAL DECREE BECOMING FINAL SO THAT ALL STATUTORY TIME LIMITS CAN BE MET PRIOR TO SAID ELECTION.

ALL FINAL DECREES WHICH HAVE NOT RECEIVED VOTER APPROVAL AS REQUIRED BY THIS SECTION AT THE NEXT GENERAL ELECTION PRACTICABLE SHALL BE DEEMED CONTINGENT AND NO TRANSFER OUT OF THE DISTRICT MAY BEGIN UNTIL AND UNLESS VOTER APPROVAL IS OBTAINED.

WATER CONSERVANCY DISTRICTS AND WATER CONSERVATION DISTRICTS INCLUDE THOSE POLITICAL SUBDIVISIONS STATUTORILY REFERRED TO AS SUCH PRIOR TO THE EFFECTIVE DATE OF THIS SECTION AND TO [sic] ANY AND ALL GOVERNMENTAL SUBDIVISIONS WITH THE SAME OR SUBSTANTIALLY SIMILAR STATUTORY PURPOSE AND FUNCTION OF EITHER TYPE OF DISTRICT WHICH MAY EXIST STATUTORIALY [sic] OR CONSTITIONALLY [sic] IN THE FUTURE.

APPENDIX B

**Proposed Initiative on W.A.T.E.R.**

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION TO CHANGE THE PREFERENCE FOR THOSE USING WATER FOR DOMESTIC PURPOSES SO THAT SUCH USERS PREVAIL ONLY OVER THOSE USING WATER FOR MANUFACTURING PURPOSES, RATHER THAN OVER THOSE CLAIMING FOR ANY OTHER PURPOSE, AND TO REQUIRE APPROVAL BY A MAJORITY OF THE STATUTORILY QUALIFIED ELECTORS OF WATER CONSERVANCY DISTRICTS OR WATER CONSERVATION DISTRICTS MOST DIRECTLY AFFECTED, OF FINAL CONDITIONAL WATER RIGHT DECREES ENTERED

ON AND AFTER JANUARY 1, 1995, TRANSFERRING WATER FOR USE OUTSIDE OF SUCH DISTRICTS WHEN SUCH A TRANSFER REMOVES WATERS FROM A RIVER BASIN SUBJECT TO AN INTERSTATE RIVER BASIN COMPACT OR WHEN SAID TRANSFER IS OFFICIALLY CONTESTED BY SUCH A DISTRICT.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO CHANGE THE PREFERENCE FOR THOSE USING WATER FOR DOMESTIC PURPOSES SO THAT SUCH USERS PREVAIL ONLY OVER THOSE USING WATER FOR MANUFACTURING PURPOSES, RATHER THAN OVER THOSE CLAIMING FOR ANY OTHER PURPOSE, AND TO REQUIRE APPROVAL, BY A MAJORITY OF THE STATUTORILY QUALIFIED ELECTORS OF WATER CONSERVANCY DISTRICTS OR WATER CONSERVATION DISTRICTS MOST DIRECTLY AFFECTED, OF FINAL CONDITIONAL WATER RIGHT DECREES ENTERED ON AND AFTER JANUARY 1, 1995, TRANSFERRING WATER FOR USE OUTSIDE OF SUCH DISTRICTS WHEN SUCH A TRANSFER REMOVES WATERS FROM A RIVER BASIN SUBJECT TO AN INTERSTATE RIVER BASIN COMPACT OR WHEN SAID TRANSFER IS OFFICIALLY CONTESTED BY SUCH A DISTRICT?

The summary as prepared by the Board is as follows:

This measure amends Article XVI, Section 6 of the Colorado Constitution to change the preference for those using water for domestic purposes so that such users prevail only over those using water for manufacturing purposes, rather than over those claiming for any other purpose.

The measure would require the approval by a majority of the statutorily qualified electors of water conservancy districts or water conservation districts most directly affected voting at a general election of final conditional water right decrees entered on and after January 1, 1995, transferring water for use outside of such districts, when such a transfer removes waters from a river basin subject to an interstate river basin compact or when such transfer is officially contested by such a district.

The measure specifies that the election requirement does not apply to conditional water right decrees which become final prior to January 1, 1995. It specifies that a conditional decree becomes final if not appealed and when the time for filing an appeal expires or upon the Colorado Supreme Court affirming a conditional decree. It authorizes the water court to determine which water conservancy or water conservation district is the most directly affected by a water transfer based on the location of the population and acreage affected, and places of potential water and economic loss, or a combination of these factors. It specifies that a district officially contests intra-basin transfers only when the governing board of such a district challenges in court the proposed transfer at all times, never stipulating to any such decree of extra district transfer and never dropping out of the proceedings.

Any final conditional decree subject to the election requirement of this measure and not approved by the voters would be contingent, so that no transfer of water may occur pursuant to the decree until voter approval is obtained.

Water conservancy and water conservation districts in this measure include all political subdivisions of the state referred to in law as such prior to the effective date of the measure and to any governmental units with substantially similar statutory purpose and function which may be created in the future.

The measure would have a direct fiscal impact on any water conservation district or water conservancy district that had to pay for required elections. The amount would depend on the number of elections actually required and cannot be known at this time. Districts might also incur more legal fees in challenging additional water transfers.

In addition, since the water rights subject to voter approval can be considered "property rights", districts may have to compensate water right owners who sue based on the diminished value of the right if a transfer is not approved by the voters.

The exact dollar amount of these impacts in [sic] unknown but may be significant.

In addition, while the fiscal impact of this measure on local governments is not subject to precise calculation, it may have a significant fiscal impact if it has the effect of increasing the price of agricultural and manufacturing water rights.

Agricultural water rights are estimated to constitute between 80 and 90% of total appropriated water rights in Colorado. During periods of drought a higher preference category of water right can "call" water that would otherwise be available for use by a right with lower preference. Because agricultural water rights would no longer be subject to "call" for domestic purposes, local governments supplying water to domestic users may have to lease rights to agricultural water in times of diminished domestic supplies. This demand could increase the value of agricultural water and the costs for local governments to access such supplies.

Domestic users would continue to have the option of "calling" the 3% of water which is used for manufacturing purposes. If the market demands proportionately more of this minor sector of water supplies, the value of manufacturing water rights may also increase substantially and affect the costs of local governments supplying water to domestic users according [sic].