In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR A PETITION ON CAMPAIGN AND POLITICAL FINANCE.

Douglas Bruce, Petitioner,

and

Richard K. Bainter and Patricia L. Johnson, Respondents,

and

Title Setting Board, Merilyn Handley, Rebecca Lennahan, and Stephen Erkenbrack, Respondents.

No. 94SA146.

Supreme Court of Colorado, En Banc.

July 5, 1994.

**312**

Douglas Bruce, pro se.

Holland & Hart, Brooke Jackson, Dana Cephas, Denver, for respondents.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G.

1. The Initiative is attached as Appendix A.

Knaizer, Deputy Atty. Gen., Gen. Legal Services Section, Denver, for respondents Title Setting Bd.

Justice SCOTT delivered the Opinion of the Court.

Petitioner Douglas Bruce, a registered elector for the State of Colorado, brings this original proceeding to challenge the action of the Initiative Title Setting Board (hereafter the Board) in setting the title, ballot title and submission clause, and summary for a proposed initiated amendment to the Colorado Constitution. The proposed amendment, entitled "Campaign and Political Finance Initiative" (hereafter the Initiative), limits campaign contributions for state-wide office candidates, establishes civil and criminal sanctions for contribution limits violations, and bars from elective office any candidate who violates the terms of the campaign financing amendment.

Bruce argues that the title, ballot title and submission clause, and summary set by the Board are invalid as a matter of law because they do not fairly express the true meaning and intent of the proposed constitutional amendment, and hence are misleading to voters. In all, Bruce asserts fifteen grounds in support of this claim. We address each of his challenges *seriatim,* and for the reasons discussed below, affirm the Board's action.

I

On March 4, 1994, respondents Richard K. Bainter and Patricia L. Johnson filed a draft of the Initiative with the legislative council and the office of legislative legal services.[1] The Board convened a hearing on March 16, 1994, to set the title, ballot title and submission clause, and summary for the Initiative. Together with another registered elector, Bruce moved for a rehearing, contesting the validity of the title, ballot title and submission clause, and summary. At the rehearing held on April 6, 1994, the Board made minor

revisions in the title and the ballot title and submission clause.[2].

Seeking further revisions to the title, ballot title and submission clause, and summary, Bruce filed for review of the Board's action, pursuant to section 1–40–107(2), 1B C.R.S. (1993 Supp.).[3] Bruce now asserts that several ambiguities in the language adopted by the Board in setting out the title, ballot title and submission clause, and summary obscure the true intent and meaning of the Initiative such that it fails to adequately inform the electorate of its effects.

## II

The standards governing our review of a Board's title-setting actions are well established. As a rule, we do not address the merits of a proposed initiative, interpret the meaning of the language or suggest its probable application if adopted by the electorate. *In re Limited Gaming in the City of Antonito*, 873 P.2d 733, 739 (Colo. 1994). Furthermore, we will uphold the Board's choice of language if it "clearly and concisely reflects the central features of the initiative." *Id.* (citing *In re Limited Gaming in the Town of Idaho Springs*, 830 P.2d 963, 970 (Colo.1992) and *In re Limited Gaming in Manitou Springs*, 826 P.2d 1241, 1245 (Colo.1992)); *see also In re Proposed Initiative Under the Designation Tax Reform*, 797 P.2d 1283, 1288 (Colo.1990) (holding that unless clearly misleading, we will not interfere with the board's choice of language); *In re Increase of Taxes on Tobacco Products Initiative*, 756 P.2d 995, 999 (Colo.1988) (concluding it is not the function of the supreme court to rephrase the language adopted by the Board to obtain the most precise and exact ballot title or summary language possible). Thus we indulge all legitimate presumptions in favor of the propriety of the

Board's action, and only in clear cases will we invalidate the title, ballot title and submission clause, or summary prepared by the Board. *In re Casino Gaming Initiative*, 649 P.2d 303, 306 (Colo.1982).

Certain tenets direct the Board's actions, and thus assist in our review of the propriety of its action in the present case. First, the language that the Board adopts must be brief, unambiguous and direct, *see* § 1–40–106(3)(a) (the title board for statewide ballot issues shall prepare a clear and concise summary of the proposed law or constitutional amendment), and as such, it should reference only the central points of the proposed measure. *In re Limited Gaming in the City of Antonito*, 873 P.2d at 739. Along these same lines, the Board is not required to include every aspect of a proposed measure in the title and submission clause, *see In re Election Reform Amendment*, 852 P.2d 28 (Colo.1993), provide specific explanations of a proposal, *see In re State Personnel System*, 691 P.2d 1121 (Colo.1984), or discuss every possible effect of an initiated measure, *see In re Sale of Table Wine in Grocery Stores*, 646 P.2d 916 (Colo.1982). Rather, the initiated measure's title, ballot title and submission clause, and summary need only fairly reflect the content of the measure. *In re Second Initiated Constitutional Amendment*, 200 Colo. 141, 613 P.2d 867 (1980).

Thus as a general rule we will reject the Board's action only where the language it has adopted is so inaccurate as to clearly mislead the electorate. *Id.; see also In re State Personnel System*, 691 P.2d at 1123. Bearing in mind this deferential standard of summary review governing challenges to the

---

**2.** The Board's proposed Title, Ballot Title and Submission Clause, and Summary are set forth in Appendix B.

**3.** That section provides as follows:
   (2) If any person who filed a motion for a rehearing pursuant to subsection (1) of this section is overruled by the title board, then the secretary of state shall furnish such person, upon request, a certified copy of the petition with the titles, submission clause, and summary of the proposed law or constitutional

amendment, together with a certified copy of the motion for rehearing and of the ruling thereon. If filed with the clerk of the supreme court within five days thereafter, the matter shall be docketed as a cause there pending, which shall be placed at the head of the calendar and disposed of summarily, either affirming the action of the title board or reversing it, in which latter case the court shall remand it with instructions, pointing out where the title board is in error.

Board's title setting decisions, we address each of petitioner Bruce's arguments in turn.

### III

### A

Initially, we note that some of Bruce's arguments constitute either challenges to the merits of the proposed measure or to its application, rather than protests to the accuracy and fairness of the language adopted by the Board. We decline to review such complaints. *See In re Limited Gaming in the City of Antonito*, 873 P.2d 733 (Colo.1994).

The objections raised by Bruce that exceed the scope of our review include: 1) that the requirement that candidates receive at least sixty per cent of their contributions from individuals is a "sham" because if that minimum refers to the number of contributions, "the test can be met by a blizzard of $1 donations a week after the election [and, if it refers to dollar amounts], a loan by a successful candidate to his committee, later forgiven, or a shakedown of those who want belatedly to go with the winner, is allowed"; 2) that the Initiative's purported aim to limit the amount of campaign contributions is a pretext, in light of the fact that candidates have a constitutional right to spend, without limitation, personal funds on campaign costs; 3) that because the term "contribution" alludes to the intent of the contributor, enforcement of the Initiative's provisions will be "subjective";[4] 4) that the Initiative's contributions limitations are not sufficiently "comprehensive," because the proposed measure "allows loans with no prohibition on waiver of repayment"; 5) that the contributions limitations weaken the vigor of political parties; 6) that the Initiative's method of funding the commission will lead the commission to impose fines for self-interested, rather than valid reasons; 7) that the penalties established for violations of the limitations on campaign contributions rule are so "draconian" as to discourage qualified individuals

from running for office; 8) that the fiscal impact statement assumes a July 1, 1994, effective date, despite the fact that the text of the fiscal note provides no basis for "retroactivity"; and finally, 9) that the method for selecting the commission, providing that two of the seven members of the commission be appointed by the Chief Justice of this court, and the remaining commissioners by various members of the state senate, creates an inherent conflict of interest between the commission membership and the appointers. Bruce contends that each of these alleged deficiencies in the Initiative should be disclosed to the voters.

■ Because these matters do not implicate the fairness and accuracy of the language selected by the Board, but instead either impugn the merits of the proposed Initiative or contest the validity of the measure's application and enforcement, we reject these challenges as not within the scope of this review. We now proceed to the reviewable objections raised by Bruce.

### B

■ Bruce contends that the ballot title and submission clause fails to disclose that the proposed measure limits only those contributions to state and local campaigns, and does not include contributions to federal office campaigns. However, the title and submission clause state that the measure is an amendment to the *state* constitution, and the summary specifically delineates those *state offices* affected by the measure. As such, the electorate is not likely to be misled by the Board's failure to distinguish between state and local, and federal elections.

### C

■ Bruce next argues that the ballot title language incorrectly implies that there are currently no limits on independent campaign expenditures, and that there are no current reporting requirements[5] for candidates.

---

4. "Contribution" is defined, in part, to include a gift of money to an incumbent where the contributor's purpose "is to compensate the officeholder for public service or to help defray the officeholder's expenses...."

5. According to Bruce, adding the term "additional" to modify the language "independent expenditures" and "reporting" in the ballot title and submission clause would be a "minimal improvement."

The language of the ballot title and submission clause that Bruce challenges states that the proposed measure "requires notice and disclosure of independent expenditures in an election [and] reporting to the secretary of state by contributions, expenditures, and obligations."

We perceive no misimpressions created by the Board's choice of language. The Board is only obligated to fairly summarize the central points of a proposed measure, and need not refer to every effect that the measure may have on the current statutory scheme. *See In re Limited Gaming in the City of Antonito*, 873 P.2d 733 and *In re Casino Gaming Initiative*, 649 P.2d 303, *supra*. Thus there is no requirement that the Board preface the language of this section with the note that limitations on independent expenditures and reporting requirements *currently* exist by statute, and that the Initiative imposes additional limits. As such, we reject Bruce's argument and thus decline to invalidate the ballot title language of this provision.

### D

Bruce argues that the ballot title and submission clause fails to state that persons who violate the provisions of the proposed measure are prohibited *indefinitely* from holding public office. According to Bruce, appending the term "forever" to the ballot title and submission clause will "avoid an assumption by the public that it is only the office to which the candidate is elected, no matter which one, that is forfeited."

We find no merit in this argument. The Board's choice of language, that the violating candidate "forfeits the right to hold *any* elected public office," adequately conveys that the prohibition is indefinite and that it applies to "any" elected public office. We therefore will not interfere with the Board's choice of language as to this provision.

### E

Bruce argues that under *In re Election Reform Amendment*, 852 P.2d 28 (Colo. 1993), the statement of fiscal impact set out by the Board is deficient because that deci-

sion requires each "distinct provision of the proposed amendment [to be] be addressed individually."

Bruce misreads our decision in *In re Election Reform Amendment*. There, after reiterating the general rule that the Board typically is not required to formulate definitive estimates of the fiscal impact of a proposed measure because many variables affecting the fiscal effects of a proposed measure are unknown, *see Spelts v. Klausing*, 649 P.2d 303 (Colo.1982), we created an exception to that rule that applies whenever the "indeterminacy appears to result from [a] multitude of provisions having separate and sometimes conflicting fiscal impacts producing an indeterminate aggregate impact." *In re Election Reform Amendment*, 852 P.2d at 37. We then held that where the Board could not determine the aggregate fiscal impact of a proposed measure, but had adequate information to assess the impact of a particular provision, the Board "should state with specificity which provision will have fiscal impacts which are capable of being estimated, and which are truly indeterminate." *Id.*

In the present matter, the provisions do not produce a "separate and conflicting fiscal impact" and the aggregate impact is known. Therefore, each provision of the proposed amendment need not be addressed individually, and the Board's summary of the Initiative's fiscal impact is sufficient.

### F

In Bruce's final challenge to the Board's action, he asserts that the Board lacks jurisdiction to set the title, ballot title and submission clause, and summary because the proponents of the Initiative did not "prove" that they were in compliance with the filing procedure set out in section 1–40–105(4), 1B C.R.S. (1993 Supp.). That section provides that the proponents of the measure must file with the secretary of state a copy of the original typewritten draft, an amended draft if one exists, and an original final draft of the initiative petition. A presumption exists that the secretary of state properly determined the sufficiency of the filing of a petition to initiate a measure under the initiative and referendum statute. *Brownlow v.*

*Wunch,* 102 Colo. 447, 80 P.2d 444 (1938) (decided under former statute). Thus contrary to Bruce's contention that the proponents have not "proved" that they filed their petition in accordance with the statutory procedure set out in section 1–40–105(4), the burden of demonstrating procedural noncompliance rests with him, not the proponents of the Initiative. Because Bruce has not shown any defect in the proceeding that would destroy the Board's jurisdiction in this matter, we reject his jurisdictional challenge.

### IV

In summary, we conclude that the title, ballot title and submission clause, and summary fixed by the Board fairly and accurately convey the true meaning and intent of the proposed amendment, that the fiscal impact statement is sufficiently specific, and that the Board had jurisdiction in this matter. Accordingly, we affirm the action of the Board.

### APPENDIX A

BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO:

The Constitution of the State of Colorado is hereby amended by the addition of a new article to read:

### ARTICLE XXVIII CAMPAIGN AND POLITICAL FINANCE

**Section 1.** Definitions. "Candidate committee" means a person or persons with the common purpose of receiving contributions and making expenditures under the authority of a candidate for partisan political office. Any candidate for partisan political office shall have only one candidate committee.

"Commission" means the campaign and political finance commission.

"Conduit" means a person who transmits, or arranges the transmission of, more than one contribution directly to a candidate or candidate committee from another person. "Conduit" does not include the contributor's immediate family members, the candidate or campaign treasurer of the candidate committee receiving the contribution, a volunteer fund raiser hosting an event for a candidate committee, or a professional fund raiser if the fund raiser is compensated at the usual and customary rate.

"Contribution" means a gift, loan, pledge, or advance of money or guarantee of a loan made to or for any candidate for political office, candidate committee, or political committee for the purpose of influencing the nomination, retention, recall, election, or defeat of any candidate. "Contribution" includes, but is not limited to, a gift of money to or for any incumbent, or person holding public office, the purpose of which is to compensate the officeholder for public service or to help defray the officeholder's expenses incident thereto but which are not covered by official compensation; and any payment made after an election to meet any deficit or debt incurred during the course of a campaign. "Contribution" also includes gifts or loans of any item of real or personal property, other than money, made to or for any candidate committee or political committee. Personal services are a contribution from the person paying for the services. "Contribution" does not include services provided without compensation by individuals volunteering their time on behalf of a candidate committee or political committee.

"Election cycle" means the period of time beginning thirty days following a general election for the particular office and ending thirty days following the next general election for that office.

"Independent expenditure" means payment of money by any, person for the purpose of advocating the election or defeat of a candidate, which expenditure is not controlled by, coordinated with, or made upon consultation with any candidate or any agent of such candidate. "Independent expenditure" includes expenditures for political messages which unambiguously refer to any specific public office or candidate for such office, but does not include expenditures made by persons, other than political parties and political committees, in the regular course and scope of their business.

"Person" means any natural person, partnership, committee, association, corporation, labor organization, political party, or other organization or group of persons.

"Political message" means a message delivered by telephone, any print or electronic media, or other written material which advocates the election or defeat of any candidate for partisan political office or which unambiguously refers to such candidate or partisan political office.

"Political committee" means two or more persons who are elected, appointed, or chosen, or have associated themselves, for the purpose of accepting or making contributions, or making independent expenditures, to support or oppose a candidate for partisan public office at any election. "Political committee" does not include political parties or candidate committees as otherwise defined herein.

"Political Party" means any group of registered electors who, by petition or assembly, nominate candidates for the official general election ballot. "Political party" includes affiliated party organizations at the state, county, and election district levels and all such affiliates are considered to be a single entity for purposes of this article.

**Section 2.** Contribution limits. (1) Candidate committees shall receive at least sixty percent of their contributions from natural persons. Compliance with this requirement shall be determined by the campaign committee report filed thirty days following the applicable general election.

(2) No natural person or political committee shall make, and no candidate committee shall accept, aggregate contributions to a candidate committee for a primary or general election in excess of the following amounts:

(a) Five hundred dollars to any one candidate for governor;

(b) Two hundred fifty dollars to any one candidate for lieutenant governor, secretary of state, state treasurer, or attorney general; and

(c) One hundred dollars to any one candidate for the state senate, state house of representatives, state board of education, or regent of the University of Colorado.

(3) No candidate committee shall accept contributions from or make contributions to, another candidate committee.

(4) No political party shall accept contributions that are intended, or in any way designated, to be passed through the party to a specific candidate committee. Nor shall a political party accept aggregate contributions from any person that exceed twenty-five hundred dollars per year.

(5) No political party shall contribute more than five thousand dollars per election cycle to any one state senate, state representative, state board of education, or regent of the University of Colorado candidate committee and no more than twenty-five thousand dollars per election cycle to any one governor, secretary of state, state treasurer, or attorney general candidate committee. Political parties shall not contribute to lieutenant governor candidate committees.

(6) Only natural persons, political parties, and political committees may contribute to candidate committees.

(7) No political committee shall accept an aggregate contribution from any person in excess of two hundred fifty dollars per house of representatives election cycle.

(8) No person shall act as a conduit for a contribution.

(9) Nothing in this article shall prevent a candidate committee from receiving a loan from a financial institution organized under state or federal law if the loan bears the usual and customary interest rate, is made on a basis that assures repayment, is evidenced by a written instrument, and is subject to a due date or amortization schedule.

**Section 3.** Unexpended campaign contributions. Any unexpended campaign contributions held by a candidate committee thirty days following the applicable general election shall not be counted as contributions from natural persons in any subsequent election for purposes of section 2(1) no matter how those contributions were originally classified.

**Section 4.** Independent expenditures. (1) Any person making an independent expenditure in excess of five hundred dollars shall deliver notice in writing of such independent

expenditure, as well as the amount of such expenditure, and a detailed description of the use of such independent expenditure, within twenty-four hours after obligating funds for such expenditure. Such notice shall be delivered to all candidates in the affected race and to the secretary of state, by hand delivery. The notice shall specifically state the name of the candidate whom the independent expenditure is intended to support or oppose. Each independent expenditure shall require the delivery of a new notice.

(2) Any person making an independent expenditure in excess of five hundred dollars shall disclose in the political message produced by the expenditure, the full name of the person, the name of the registered agent, the amount of the expenditure, and the specific statement that the advertisement or material is not authorized by any candidate. Such disclosure shall be prominently featured in the political message.

(3) Expenditures by any person on behalf of a candidate for public office made upon consultation with, coordinated with, or controlled by that candidate shall be considered a contribution to the candidate and subject the candidate and the contributor to any applicable penalties contained in this article.

**Section 5.** Disclosure. (1) All candidate committees, political committees and political parties shall report to the secretary of state contributions to each such organization from each contributor to the organization, including the name, address, and occupation of each person who has contributed twenty dollars or more. Candidate committees, political committees, and political parties shall also report to the secretary of state all contributions, expenditures, and obligations made by the organization. Such reports shall be filed quarterly in odd numbered years and on the first day of May, June, July, August, September, October, fourteen days and seven days before, and thirty days after a general election in even numbered years, and such additional reports as required by law.

(2) All candidate committees, political committees, and political parties shall register with the secretary of state before accepting or making any contributions. Registration shall include a statement listing

 (i) the organization's full name, spelling out any acronyms used therein,

 (ii) a natural person authorized to act as a registered agent,

 (iii) a street address and telephone number for the principle place of operations,

 (iv) all affiliated candidates and political committees,

 (v) the purpose or nature of interest of the committee or party.

**Section 6.** Campaign and political finance commission created. (1) There is hereby created a body corporate and a political subdivision of the state, a campaign and political finance commission. The commission shall not be counted toward any limitation on the number of state agencies contained in this constitution.

(2) The commission shall consist of seven members, no more than four being from the same political party. One member shall be appointed by the governor, one by the president and one by the minority party leader of the senate, one by the speaker and one by the minority party leader of the house of representatives, and two by the chief justice of the supreme court. Original appointments shall be made by the respective appointing authorities in the same order as listed above and within ninety days of the effective date of this article. Vacancies shall be filled within ninety days by the original appointing authority.

(3) The commission shall have the power to adopt rules and regulations governing the conduct of its business consistent with the provisions of this article.

(4) No member or employee of the commission shall hold or be a candidate for any other public office while a member or employee of the commission or one year thereafter, hold office in any political party or political committee, or participate in or contribute to the political campaign of any candidate for partisan political office.

(5) The term of a commissioner shall be three years, except that, of the original members, the first three appointed shall serve a

two year term. No member of the commission shall serve for more than two full terms.

(6) Members of the commission shall be reimbursed on a per them basis for actual attendance at meetings, hearings, and attending to any other necessary business of the commission at the same rate, or greater, as that paid to members of the general assembly. Members of the commission shall also be reimbursed for actual reasonable and necessary expenses incurred.

(7) The commission may subpoena witnesses, compel attendance and testimony, administer oaths and affirmations, take evidence, require by subpoena the production of books, papers, records, and other evidence necessary for the performance of its duties or exercise of its powers, including that of investigation. The commission shall have complete access to relevant records maintained by the secretary of state.

(8) The commission may hire staff, promulgate such rules, and utilize state hearing officers as it deems necessary for the performance of its duties which include, but are not limited to, the handling of investigations, complaints, hearings, and disposition of all matters addressed in this article. Except as otherwise provided in this article, the commission shall have exclusive original jurisdiction over the provisions of this article.

(9) The commission shall adjust the contribution limits and disclosure limits set forth in this article biennially to reflect the rate of inflation as determined by the consumer price index for urban consumers in the Denver–Boulder area.

(10) The commission is authorized to carry out the provisions of this article with appropriations which shall be made by the general assembly in an annual amount commensurate with the needs of the commission to fulfill its duties as prescribed in this article.

**Section 7.** Sanctions. (1) It shall be a class three misdemeanor for anyone to knowingly violate sections two and four of this article.

(2) Any person who violates any provision of this article relating to contribution limits shall be liable to the commission for double the amount contributed or received in violation of the applicable provision of this article. Candidates shall be personally liable for fines imposed against the candidate's committee.

(3) Any candidate adjudged guilty in a criminal action for a violation of any provision of this article shall forfeit his right to hold any elected public office. Not withstanding any other constitutional provision to the contrary, such candidate may be removed from office by order of any court of competent jurisdiction.

**Section 8.** Conflicting constitutional provisions declared inapplicable. Any provision in the constitution of this state in conflict or inconsistent with this article is hereby declared to be inapplicable to the matters covered and provided for in this article.

**Section 9.** This article is self-executing. Legislation may be enacted to facilitate its operations, but in no way limiting or restricting the provisions of this article or the powers herein granted.

**Section 10.** Severability. If any provision of this article, or the application thereof to any person or circumstance, is held invalid, such invalidity shall not affect other provisions or applications of the article which can still be given effect. Therefore, the provisions of this article are declared to be severable.

### APPENDIX B

*Title*

AN AMENDMENT TO THE COLORADO CONSTITUTION TO LIMIT THE AMOUNT OF CAMPAIGN CONTRIBUTIONS, INCLUDING IN–KIND CONTRIBUTIONS, THAT MAY BE ACCEPTED BY CANDIDATE COMMITTEES, POLITICAL COMMITTEES, AND POLITICAL PARTIES; TO REQUIRE CANDIDATE COMMITTEES TO RECEIVE AT LEAST SIXTY PERCENT OF THEIR CONTRIBUTIONS FROM NATURAL PERSONS; TO PROHIBIT A CANDIDATE COMMITTEE FROM MAKING A CONTRIBUTION TO OR ACCEPTING A CONTRIBUTION FROM ANOTHER CANDIDATE COMMITTEE; TO PROHIBIT A POLITICAL

PARTY FROM ACCEPTING CONTRIBUTIONS THAT ARE INTENDED TO BE PASSED THROUGH TO A CANDIDATE COMMITTEE; TO LIMIT THOSE PERSONS WHO MAY CONTRIBUTE TO A CANDIDATE COMMITTEE TO NATURAL PERSONS, POLITICAL PARTIES, AND POLITICAL COMMITTEES; TO TREAT UNEXPENDED CAMPAIGN CONTRIBUTIONS HELD BY A CANDIDATE COMMITTEE AS CONTRIBUTIONS FROM OTHER THAN NATURAL PERSONS IN A SUBSEQUENT ELECTION; TO REQUIRE NOTICE AND DISCLOSURE OF INDEPENDENT EXPENDITURES IN ELECTION; TO REQUIRE REPORTING TO THE SECRETARY OF STATE BY CANDIDATE COMMITTEES, POLITICAL COMMITTEES, AND POLITICAL PARTIES OF CONTRIBUTIONS, EXPENDITURES, AND OBLIGATIONS; TO CREATE THE CAMPAIGN AND POLITICAL FINANCE COMMISSION WITH JURISDICTION OVER THESE PROVISIONS; TO PROVIDE CIVIL AND CRIMINAL SANCTIONS FOR VIOLATIONS OF THE PROPOSED AMENDMENT; AND TO PROVIDE THAT A CANDIDATE FOUND GUILTY OF A CRIMINAL VIOLATION FORFEITS THE RIGHT TO HOLD ANY ELECTED PUBLIC OFFICE.

### Ballot Title and Submission Clause

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO LIMIT THE AMOUNT OF CAMPAIGN CONTRIBUTIONS, INCLUDING IN-KIND CONTRIBUTIONS, THAT MAY BE ACCEPTED BY CANDIDATE COMMITTEES, POLITICAL COMMITTEES, AND POLITICAL PARTIES; TO REQUIRE CANDIDATE COMMITTEES TO RECEIVE AT LEAST SIXTY PERCENT OF THEIR CONTRIBUTIONS FROM NATURAL PERSONS; TO PROHIBIT A CANDIDATE COMMITTEE FROM MAKING A CONTRIBUTION TO OR ACCEPTING A CONTRIBUTION FROM ANOTHER CANDIDATE COMMITTEE; TO PROHIBIT A POLITICAL PARTY FROM ACCEPTING CONTRIBUTIONS THAT ARE INTENDED TO BE PASSED THROUGH TO A CANDIDATE COMMITTEE; TO LIMIT THOSE PERSONS WHO MAY CONTRIBUTE TO A CANDIDATE COMMITTEE TO NATURAL PERSONS, POLITICAL PARTIES, AND POLITICAL COMMITTEES; TO TREAT UNEXPENDED CAMPAIGN CONTRIBUTIONS HELD BY A CANDIDATE COMMITTEE AS CONTRIBUTIONS FROM OTHER THAN NATURAL PERSONS IN A SUBSEQUENT ELECTION; TO REQUIRE NOTICE AND DISCLOSURE OF INDEPENDENT EXPENDITURES IN AN ELECTION; TO REQUIRE REPORTING TO THE SECRETARY OF STATE BY CANDIDATE COMMITTEES, POLITICAL COMMITTEES, AND POLITICAL PARTIES OF CONTRIBUTIONS, EXPENDITURES, AND OBLIGATIONS; TO CREATE THE CAMPAIGN AND POLITICAL FINANCE COMMISSION WITH JURISDICTION OVER THESE PROVISIONS; TO PROVIDE CIVIL AND CRIMINAL SANCTIONS FOR VIOLATIONS OF THE PROPOSED AMENDMENT; AND TO PROVIDE THAT A CANDIDATE FOUND GUILTY OF A CRIMINAL VIOLATION FORFEITS THE RIGHT TO HOLD ANY ELECTED PUBLIC OFFICE?

### Summary

The measure imposes limitations on the amount of campaign contributions that may be made and accepted by certain persons as follows: Candidate committees are required to receive at least 60% of their contributions from natural persons, are prohibited from making a contribution to or accepting a contribution from another candidate committee, and are limited to accepting contributions from natural persons, political committees, and political parties. Contributions from a natural person or political committee to a candidate committee in a primary or general election are limited to five hundred dollars for governor, two hundred fifty dollars for lieutenant governor, secretary of state, state treasurer, or attorney general, and one hundred dollars for state senate, state house of representatives, state board of education, or regent of the University of Colorado. Political parties are prohibited from passing con-

tributions through to specific candidates, are limited to accepting twenty-five hundred dollars in aggregate contributions annually from any person, are limited to contributing five thousand dollars to candidate committees for state senate, state representative, state board of education, or regent of the University of Colorado and twenty-five thousand dollars to candidate committees for governor, secretary of state, state treasurer, or attorney general and are prohibited from contributing to lieutenant governor candidate committees. Political committees are limited to accepting two hundred fifty dollars in aggregate contributions from any person per house of representatives election cycle. Persons are prohibited from transmitting or arranging the transmission of more than one contribution directly to a candidate or candidate committee from another person.

The measure treats unexpended campaign contributions held by a candidate committee following a general election as contributions from persons other than natural persons in a subsequent election for purposes of the 60% from natural persons contribution requirement.

The measure defines an "independent expenditure" as a payment of money by a person for the purpose of advocating the election or defeat of a candidate, which is not controlled by, coordinated with, or made upon consultation with any candidate or any agent of the candidate. Persons making independent expenditures in excess of five hundred dollars are required to deliver a notice of the expenditure containing certain information to affected candidates and the secretary of state within a prescribed time period and also to disclose certain information about the expenditure in a political message produced by it.

The measure requires candidate committees, political committees, and political parties to report to the secretary of state the contributions to and the contributions, expenditures, and obligations made by the organization. Those organizations would register with the secretary of state before accepting or making any contributions.

The measure creates, as a separate political subdivision of the state, a campaign and political finance commission with authority to carry out the provisions of the measure.

The measure would impose sanctions for violations of its provisions. The measure would make constitutional provisions which conflict with it inapplicable to the matters it covers.

The fiscal impact of the measure for per diem and travel expenses of the campaign and political finance commission could be approximately $33,000 in a general election year and $16,500 in an odd numbered year. Approximately $100,000 would be required annually for additional clerical support and investigative activities of the offices of the Secretary of State and the Attorney General.