184 P.3d 747 (2008)
In the Matter of the TITLE, BALLOT TITLE, and SUBMISSION CLAUSE FOR 2007-2008 # 61.
Andrew Paredes, Clara Nevarez, and Mary Phillips, Proponents, Petitioners,
v.
Jessica Peck Corry, Opponent, Respondent, and
William A. Hobbs, Sharon Eubanks, and Daniel Domenico, Title Board.
No. 08SA89.
Supreme Court of Colorado, En Banc.
May 16, 2008.
*748 Melissa Hart, Denver, CO, Attorney for Petitioners.
Hale Friesen, LLP, Richard A. Westfall, Aaron Solomon, Denver, CO, Attorneys for Respondent Jessica Peck Corry.
John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Denver, CO, Attorneys for Title Board.
Justice MARTINEZ delivered the Opinion of the Court.

I. Introduction
Petitioners Andrew Paredes, Clara Nevarez, and Mary Phillips (collectively "Proponents") brought this original proceeding under section 1-40-107(2), C.R.S. (2007), to challenge the action of the ballot title setting board (the "Title Board" or "Board") refusing, upon rehearing, to set the title, ballot title and submission clause (collectively "title") for a proposed ballot initiative 2007-2008 # 61 ("Initiative # 61" or "Initiative"). Initiative # 61 seeks to prohibit the State of Colorado from discriminating and granting preferential treatment on the basis of race, sex, color, ethnicity, or national origin in public employment, public education, or public contracting, except as permitted by the United States Constitution.
Because we hold that the Initiative does not violate the single subject requirement of article V, section 1(5.5) of the Colorado Constitution, we reverse the action of the Board and remand the matter to the Board with directions to set the title consistent with this opinion.

II. Facts and Procedural History
Initiative # 61 proposes to amend article II of the Colorado Constitution by adding a new section 32. Seeking to prohibit discrimination and preferential treatment, except as permitted by the United States Constitution, the substance of the Initiative consists of two sentences. The first sentence prohibits the state from discriminating against, and granting preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting. The second sentence qualifies the prohibition, providing that the state is not prevented from acting consistently with standards set under the United *749 States Constitution, as interpreted by the United States Supreme Court.[1]
On February 20, 2008, the Board found that the Initiative contained a single subject and set the title.[2] Respondent, Jessica Peck Corry, subsequently filed a motion for rehearing, alleging that the Initiative contained a deceptive opening sentence, did not constitute a single subject, and that the title was misleading. At its next meeting on March 5, 2008, the Board granted the motion. The Board concluded that Initiative # 61 did not constitute a single subject and vacated the title. Proponents filed a Petition for Review before this court. The parties' arguments center on the coupling of the prohibition against discrimination and preferential treatment with language permitting such action to the extent permitted under the United States Constitution.

III. Analysis

A. Initiative # 31
As a preliminary matter, we briefly consider another measure, Initiative 2007-2008 # 31 ("Prohibition on Discrimination and Preferential Treatment by Colorado Governments"), which raised issues different from, but related to, the issue presented by Initiative # 61. Like Initiative # 61, Initiative #31 concerns a prohibition on discrimination and preferential treatment by the state. In the case of Initiative # 31, we considered a number of single subject challenges that primarily focused on the terms "preferential treatment" and "discrimination" and on the issue of whether those terms are similar or whether preferential treatment constitutes the means to remedy past discrimination.[3] However, since we were equally divided, the Board's action was affirmed by operation of law, and our resolution of that case does not have precedential value. See C.A.R. 35(e) ("When the Supreme Court acting en banc is equally divided in an opinion, the judgment of the trial court shall stand affirmed."); see also Walker v. Stapleton, 79 Colo. 629, 630, 247 P. 1062, 1063 (1926).
In contrast to Initiative # 31, the parties' arguments in Initiative # 61 focus on the relationship between the prohibition against discrimination and preferential treatment on the one hand, and the language qualifying that the state is not prevented from engaging in action consistent with the United States Constitution on the other hand. Therefore, our analysis of that relationship assumes, without deciding the otherwise disputed notion, that the terms "discrimination" and "preferential treatment" are substantially the same.

B. Single Subject Requirement
Corry and the Board argue that Initiative # 61 violates the single subject requirement because the first sentence of the Initiative prohibits discrimination and preferential treatment while the second sentence allows such action to the extent permitted by the United States Constitution. Corry also maintains Initiative # 61 contains a deceptive opening sentence disguising the true effect of the Initiative and thus constitutes a surreptitious measure.
The Colorado Constitution provides that the Title Board may not set the title of a proposed initiative if the initiative contains multiple subjects. Section 1(5.5) sets forth the single subject requirement:

No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so *750 expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.
Colo. Const. art. V, § 1(5.5) (emphasis added); see also § 1-40-106.5, C.R.S. (2007). Thus, an initiative violates the single subject requirement when it (1) relates to more than one subject and (2) has at least two distinct and separate purposes. In re Proposed Initiative for 1999-2000 # 25, 974 P.2d 458, 463 (Colo.1999); In re Proposed Initiative for "Public Rights in Waters II", 898 P.2d 1076, 1078 (Colo.1995). On the other hand, if the initiative tends to achieve or to carry out one general object or purpose, it constitutes a single subject. In re "Public Rights in Waters II", 898 P.2d at 1078-79.
The single subject requirement is intended to prevent two practices by initiative proponents. First, it serves to ensure that each initiative depends upon its own merits for passage. See § 1-40-106.5(1)(e)(I); see also In re Proposed Initiative for 2005-2006 # 55, 138 P.3d 273, 277 (Colo.2006); In re Proposed Initiative for 1997-1998 # 64, 960 P.2d 1192, 1196 (Colo.1998). Second, the single subject requirement is intended to "prevent surreptitious measures . . . [so as] to prevent surprise and fraud from being practiced upon voters." § 1-40-106.5(1)(e)(II); see also In re Proposed Initiative for 1997-1998 # 64, 960 P.2d at 1196; In re "Public Rights in Waters II", 898 P.2d at 1079 ("[Section 1(5.5)] is intended to prevent voter surprise or uninformed voting caused by items concealed within a lengthy or complex proposal.").
In reviewing the Board's determination of whether an initiative comports with the single subject requirement, we do not address the merits or the future application of the proposed initiative. In re Proposed Initiative for 1997-1998 # 64, 960 P.2d at 1197. However, we must sufficiently examine the initiative to discern whether the constitutional prohibition against multiple subjects has been violated. Id. In our review, we must construe the single subject requirement liberally so as not to impose undue restrictions on the initiative process. In re Proposed Initiative for 1997-1998 # 74, 962 P.2d 927, 929 (Colo.1998) ("Multiple ideas might well be parsed from even the simplest proposal by applying ever more exacting levels of analytic abstraction until an initiative measure has been broken into pieces. Such analysis, however, is neither required by the single subject requirement nor compatible with the right to propose initiatives guaranteed by Colorado's constitution.")
Here, we consider the effect of adding the language preserving "the state's authority to act consistently with standards set under the United States constitution, as interpreted by the United States supreme court," to the prohibition on discrimination and preferential treatment expressed in the first sentence of the Initiative. (emphasis added). It is well established that it is ultimately the role of the United States Supreme Court to interpret the United States Constitution, and therefore all state statutory and constitutional provisions are subject to the following implicit limitation  unless the United States Constitution as interpreted by the Supreme Court requires otherwise. See U.S. Const. art. VI, cl. 2. ("This Constitution . . . shall be the supreme law of the land."). As a practical matter, the scope of this limitation is often unclear. However, the unclear scope of the limitation and the inherent tension caused by implicitly subjecting a provision to a limitation does not violate the single subject requirement. If it did, no provision would satisfy that requirement.
The second sentence of the Initiative goes a step further because it also permits, but does not require, the state to take action permitted by the United States Constitution, as interpreted by the United States Supreme Court, which is otherwise prohibited by the first sentence of the Initiative. Although this exception is different from the implicit limitation included in every state statutory or constitutional provision, its scope likewise hinges upon the United States Constitution, as interpreted by the United States Supreme Court. The inherent problems of that relationship are the same as the problems presented by the implicit limitation. Consequently, just as the uncertainty and tension involved in the implicit limitation does not *751 violate the single subject requirement, neither does it violate the single subject requirement where a provision permits, but does not require, action permitted by the United States Constitution.
Accordingly, nothing in the second sentence of the Initiative constitutes a second subject. Instead, the Initiative "effects one general purpose" and thus contains a single subject. See In re "Public Rights in Waters II", 898 P.2d at 1078-79.
For substantially the same reasons, we conclude that Initiative # 61 does not constitute a deceptive or surreptitious measure. While Corry may be correct that the average voter may not understand the meaning of the phrase, "the state's authority to act consistently with standards set under the United States constitution, as interpreted by the United States supreme court," the average voter does not understand the scope of the implicit limitation contained in every state statutory or constitutional provision any better. Therefore, we reject the argument that a measure is deceptive merely because its content depends on the United States Constitution, as interpreted by the United States Supreme Court.[4]
Thus, we hold that Initiative # 61 satisfies the single subject requirement of article V, section 1(5.5) of the Colorado Constitution, and we reverse the Board's action in refusing to set a title for Initiative # 61.

C. Title for Initiative # 61
Having concluded that the Board's action warrants a reversal, we now consider the title for Initiative # 61. Since the Board first set the title at the February 20 meeting and, upon rehearing, vacated it and declined to set a title for the Initiative, Proponents urge us to "reinstate" the title set originally. Corry maintains that the original title was misleading and argues that we should remand the case to the Board "to exercise its responsibility to set the title."
The initial responsibility for setting the title resides with the Board, and we review the Board's actions with great deference. See § 1-40-106, C.R.S. (2007); see also In re Proposed Initiative 2005-2006 # 55, 138 P.3d at 278. However, if we reverse the Board's action, section 1-40-107 mandates that we "remand . . . with instructions, pointing out where the title board is in error." Thus, where the reversal requires the Board to set or amend title, we give the Board specific instructions as to the wording of the title. See In re Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonito (Limited Gaming IV), 873 P.2d 733, 742 (Colo.1994) (directing the Board to include specific language in the title); In re Proposed Election Reform Amendment, 852 P.2d 28, 34 (Colo.1993) (same). Accordingly, we must remand Initiative # 61 to the Board and articulate the title to be set.
Because we generally defer to the Board's choice of language, we first consider the title set by the Board at the February 20 meeting. At that meeting, the Board set the title as follows:

An amendment to the Colorado constitution concerning a prohibition against discrimination by the state, and in connection therewith, prohibiting the state from discriminating against or granting preferential treatment to any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, and public contracting; preserving the state's authority to take actions regarding public employment, public education, and public contracting that are consistent with the United States constitution as interpreted by the United States supreme court. . . .
(emphasis added).
Corry argues that the title as originally set by the Board is misleading because it fails to *752 inform the voters that the Initiative will allow the state to engage in discrimination and preferential treatment permitted under the United States Constitution. Additionally, she alleges that the title impermissibly conflicts with the title of Initiative # 31. Both arguments lack merit.
While the title must "correctly and fairly express the true intent and meaning of [the initiative]," see § 1-40-106(3)(b), it is not our role to rephrase the language adopted by the Board to obtain the most precise and exact title. In re Increase of Taxes on Tobacco Prods. Initiative, 756 P.2d 995, 999 (Colo.1988). Rather, we will uphold the Board's choice of language if it "clearly and concisely reflects the central features of the initiative." In re Proposed Initiative for a Petition on Campaign & Political Fin., 877 P.2d 311, 313 (Colo.1994). Accordingly, the Board is not required to provide specific explanations of the measure or discuss its every possible effect. Id. (citations omitted). Therefore, we will reject the Board's language only if it is so inaccurate as to clearly mislead the electorate. Id.
Although Corry is correct that the title set at the February 20 meeting does not state that certain discrimination and preferential treatment may be permitted, the phrase, "preserving the state's authority to take actions . . . consistent with the United States constitution," read in conjunction with the preceding clause of the title, obviously refers to actions that discriminate or grant preferential treatment. Thus the title clearly expresses that the United States Constitution limits the prohibition on both discrimination and preferential treatment. The suggestion that the title must specifically explain the extent of the limitation commands an unrealistic assessment of the future direction of complex issues of United States constitutional law. Therefore, the title fairly and correctly expresses the meaning of the Initiative.
We also reject the argument that the title set at the February 20 meeting conflicts with the title of Initiative #31.[5] Section 1-40-106(3)(b) provides that "ballot titles . . . shall not conflict with those selected for any petition previously filed for the same election." Such a conflict exists where the titles fail to accurately reflect the distinctions between the measures, and "voters comparing the titles . . . would [not] be able to distinguish between the two proposed measures." In re the Proposed Initiated Constitutional Amendment Concerning the "Fair Treatment II", 877 P.2d 329, 333 (Colo. 1994). Here, although the first clause of both titles is the same, the subsequent clauses are different. Moreover, any confusion between the two initiatives is caused by ambiguity in Initiative # 31 about limitations on its prohibition of discrimination and preferential treatment caused by the failure to express any limitation or state whether Colorado is permitted, by the terms of Initiative # 31, to act consistently with the United States Constitution. In contrast, Initiative # 61 clearly expresses that the United States Constitution limits its similar prohibition.
In sum, we conclude that the title set at the February 20 meeting correctly and fairly expresses the true intent and meaning of Initiative # 61 and does not conflict with the title of Initiative #31. Accordingly, we direct the Board to set that title upon remand.

IV. Conclusion
Because we hold that Initiative # 61 satisfies the single subject requirement, we reverse the action of the Title Board refusing to set title for the Initiative, and we remand *753 the action to the Board to set title consistent with this opinion.
Justice RICE dissents, and Justice COATS and Justice EID join in the dissent.
Justice RICE, dissenting.
The Title Board has a hard job. In order to facilitate the initiative process, the General Assembly assigned duties to the Title Board that include: (1) "designat[ing] and fix[ing] a proper fair title for each proposed law or constitutional amendment, together with a submission clause," § 1-40-106(1), C.R.S. (2007); (2) "consider[ing] the public confusion that might be caused by misleading titles and . . . whenever practicable, avoid[ing] titles for which the general understanding of the effect of a `yes' or `no' vote will be unclear," § 1-40-106(3)(b); (3) not permitting "the treatment of incongruous subjects in the same measure," § 1-40-106.5(1)(e)(I), C.R.S. (2007); and (4) acting to "prevent surreptitious measures and appris[ing] the people of the subject of each measure by the title" in order to "prevent surprise and fraud from being practiced upon voters," § 1-40-106.5(1)(e)(II). See In re Proposed Initiative 1999-2000 # 29, 972 P.2d 257, 260 (Colo.1999) (enumerating the duties of the Title Board).
To comply with this statutory mandate, the Board must balance competing interests. For example, the Board must assist potential proponents in implementing their right to initiate laws, see In re Proposed Initiative Concerning Drinking Age in Colo., 691 P.2d 1127, 1130 (Colo.1984), while concurrently protecting the voters against confusion and fraud. Likewise, the Board must give deference to the intent of the proposal as expressed by its proponent, without neglecting its duty to consider the public confusion that might result from misleading titles. See In re Proposed Initiative on Unsafe Workplace Env't, 830 P.2d 1031, 1034 (Colo.1992).
However, if the Board cannot comprehend a proposed initiative sufficiently to state its single subject clearly in the title, it necessarily follows that the initiative cannot be forwarded to the voters. Here, the Board determined that it could not set a title for this initiative because it could not comprehend the Initiative. I disagree with the Board in this respect. In my opinion, this Initiative presents only one subject and the single subject is capable of expression in a clear, non-misleading title. However, in my view, the title proposed by the Majority is unclear and misleading. I would therefore remand to the Title Board for the setting of a new title consistent with this opinion.

A. Single Subject
Subsection (1) of Initiative 61 is composed of two sentences. Sentence 1 prohibits the state from discriminating or granting preferential treatment in the operation of public employment, public education, or public contracting to individuals or groups based on their race, sex, color, ethnicity, or national origin. Standing alone, this sentence is readily understandable.
Sentence 2, and in particular its relationship to Sentence 1, is the source of the uncertainty expressed by the Title Board during its hearing, and of its subsequent decision that the Initiative contains more than one subject. I find the confusion expressed by the Title Board over the meaning of Sentence 2 to be overstated. Sentence 2 simply provides that the state may exercise its authority to act (with respect to discrimination and preferential treatment) to the extent that the state's actions are consistent with the United States Constitution, as interpreted by the United States Supreme Court. Sentence 2, read in conjunction with Sentence 1, thus concerns the same subject as Sentence 1  namely Colorado's authority to prohibit or allow discrimination or preferential treatment in the operation of public employment, public education, or public contracting. Thus, I would agree with the Majority in holding that the Initiative presents only one subject.

B. Clear Title
My disagreement with the Majority arises from its reinstatement of the title originally set by the Title Board. In my view, the title suggested by the Majority fails for two reasons. First, the title lacks internal clarity with regard to the relationship between Sentence 1 and Sentence 2. Second, the title *754 impermissibly conflicts with the title of Initiative 31, a competing initiative set for the same election cycle. Therefore, I would remand to the Title Board for the resetting of a new title consistent with this opinion.
The standard for evaluating the clarity of titles was first set forth by this court in In re Breene:
It will not do to say that the general subject of [a proposal] may be gathered from the body of the [proposal], for, to sustain the [proposal] at all, it must be expressed in the title. . . . The matter covered by legislation is to be "clearly," not "dubiously" or "obscurely," indicated by the title. Its relation to the subject must not rest upon a merely possible or doubtful inference. The connection must be so obvious as that ingenious reasoning, aided by superior rhetoric, will not be necessary to reveal it. Such connection should be within the comprehension of the ordinary intellect, as well as the trained legal mind.
14 Colo. 401, 406, 24 P. 3, 4 (1890). In my view, the title originally set by the Title Board does not sufficiently depict the relationship between Sentence 1 and Sentence 2 in Initiative 61. Sentence 2 clearly intends to circumscribe the broad prohibition on discrimination and preferential treatment contained in Sentence 1. The title does not adequately capture this fact.
Implementation of the clear title standard is made even more difficult in this case because of a competing initiative set for this same election cycle, namely Initiative 31. Section 1-40-106(3)(b), mandates that "[b]allot titles . . . shall not conflict with those selected for any petition previously filed for the same election." We have held that such a conflict exists where the titles fail to accurately reflect the distinctions between the measures, and "voters comparing the titles . . . would [not] be able to distinguish between the two proposed measures." In re the Proposed Initiated Constitutional Amendment Concerning the "Fair Treatment II", 877 P.2d 329, 333 (Colo.1994).
As noted by the Majority, the first sentences of Initiative 31 and Initiative 61 are identical. Therefore, in order to ensure that voters are able to distinguish between the two measures, it is necessary for the title of Initiative 61 to affirmatively differentiate its purpose from that of Initiative 31. The Title Board should have used language emphasizing that the prohibition found in the first sentence of Initiative 61 is significantly limited by the second sentence of that initiative. Because Initiative 31 contains no such restriction, the limitation goes to the heart of the difference between the two initiatives. Absent such contrasting language, any title set for Initiative 61 would be substantially misleading.

C. Conclusion
Because I find the title proposed by the Majority to be unclear and misleading, I would remand to the Title Board for the setting of a new title consistent with this opinion.

Appendix A
Be It Enacted by the People of the State of Colorado:
Article II of the constitution of the state of Colorado is amended BY THE ADDITION OF A NEW SECTION to read:
Section 32. Equal Opportunity
(1) THE STATE SHALL NOT DISCRIMINATE AGAINST, OR GRANT PREFERENTIAL TREATMENT TO, ANY INDIVIDUAL OR GROUP ON THE BASIS OF RACE, SEX, COLOR, ETHNICITY, OR NATIONAL ORIGIN IN THE OPERATION OF PUBLIC EMPLOYMENT, PUBLIC EDUCATION, OR PUBLIC CONTRACTING. NOTHING IN THIS SECTION SHALL BE INTERPRETED AS LIMITING THE STATE'S AUTHORITY TO ACT CONSISTENTLY WITH STANDARDS SET UNDER THE UNITED STATES CONSTITUTION, AS INTERPRETED BY THE UNITED STATES SUPREME COURT, IN PUBLIC EMPLOYMENT, PUBLIC EDUCATION, OR PUBLIC CONTRACTING.

*755 (2) AS USED IN THIS SECTION, "STATE" MEANS, BUT IS NOT LIMITED TO, THE STATE OF COLORADO, ANY AGENCY OR DEPARTMENT OF THE STATE, ANY PUBLIC INSTITUTION OF HIGHER EDUCATION, ANY POLITICAL SUBDIVISION, OR ANY GOVERNMENTAL INSTRUMENTALITY OF OR WITHIN THE STATE.

Appendix B
An amendment to the Colorado constitution concerning a prohibition against discrimination by the state, and in connection therewith, prohibiting the state from discriminating against or granting preferential treatment to any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, and public contracting; preserving the state's authority to take actions regarding public employment, public education, and public contracting that are consistent with the United States constitution as interpreted by the United States supreme court; and defining "state" to include, without limitation, the state of Colorado, any agency or department of the state, any public institution of higher education, any political subdivision, or any governmental instrumentality of or within the state.
NOTES
[1] The text of the Initiative is attached to this opinion as Appendix A.
[2] The title, as originally set by the Board on February 20, 2008, is attached to this opinion as Appendix B.
[3] Specifically, petitioners in that case asked us to consider, among other challenges, the following issue:

Does the proposed initiative violate the single subject requirement of Colo. Const. art. V, § 1(5.5) and § 1-40-106.5, C.R.S. (2006), by combining in one measure broad prohibitions of "discrimination" and "preferential treatment?"
[4] Corry also contends that "the Supremacy Clause renders the Initiative meaningless" and that the second sentence of the Initiative contains an "exception that swallows the rule." To the extent these arguments go beyond Corry's allegation that the Initiative is deceptive, we decline to address them because they require us to consider the merits of Initiative # 61. See In re Proposed Initiative for 2005-2006 # 55, 138 P.3d 273, 278 (Colo.2006); In re Proposed Initiative for a Petition on Campaign & Political Fin., 877 P.2d 311, 314 (Colo.1994).
[5] The title of Initiative #31 reads in pertinent part:

An amendment to the Colorado constitution concerning a prohibition against discrimination by the state, and, in connection therewith, prohibiting the state from discriminating against or granting preferential treatment to any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting; allowing exceptions to the prohibition when bona fide qualifications based on sex are reasonably necessary or when action is necessary to establish or maintain eligibility for federal funds; preserving the validity of court orders or consent decrees in effect at the time the measure becomes effective. . . .
(emphasis added).